UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Andrea Brooks,                                   \*
    Plaintiff                               \*
                                                 \*
v.                                               \*    Civil No. 4:20-cv-40148-DHH
                                                 \*
William Albert D'Errico, Jr., et. al. ,          \*
    Defendants                              \*
                                                 \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM OF REASONS IN SUPPORT OF ALICE S. LOVE/SUSAN B. CARBON/LAUREN THORN/MARK S. DERBY/JULIE INTROCASO/JUDGE MICHAEL RYAN/NEW HAMPSHIRE FAMILY COURT, 9TH CIRCUIT'S MOTION TO DISMISS

Plaintiff Andrea Brooks, proceeding pro se, has filed this action against six judicial and quasi-judicial officials of the New Hampshire Family Court, 9th Circuit ("NH Family Court")—Marital Master Alice S. Love, Judge Susan B. Carbon, Referee Lauren Thorn, Judge Mark S. Derby, Judge Julie Introcaso, and Judge Michael Ryan—and the NH Family Court itself (collectively, the "judicial defendants"). In addition to damages, Brooks also seeks to remove proceedings from the NH Family Court to this Court. As fully explained below, Brooks' claims against the judicial defendants should be dismissed in their entirety because: (1) this court lacks personal jurisdiction over the judicial defendants; (2) Brooks' claims against the judicial defendants are barred by Eleventh Amendment, judicial immunity, and quasi-judicial immunity; and (3) the complaint fails to state a claim against the judicial defendants upon which relief can be granted.[1]

---

[1] Although Brooks did not formally list the NH Family Court as a defendant, see Compl. at 2–3, she asserts claims of wrongdoing against the NH Family Court throughout her complaint, see, e.g., Compl. ¶¶ 14, 28, 31, 35–36, 40–41, 45–46, 48, 55–56, 61. This memorandum assumes Brooks intended to name both the NH Family Court, and the other judicial defendants in their individual capacities, as defendants.

I. **Background**

    A. The Underlying Parenting Dispute

Brooks alleges that she is a "victim of human trafficking, specifically sex trafficking." See Compl. ¶ 17. According to Brooks, in 2009, defendant Lisa D'Errico introduced Brooks to Lisa's husband, defendant William D'Errico Jr., because Lisa "wanted [William] to get [Brooks] pregnant because [Lisa] believed she could convince [Brooks] to let her adopt [Brooks'] baby." Id. ¶ 19. Brooks asserts that she became pregnant after having sex with William, id. ¶ 22, and that she gave birth to their child on July 20, 2010, see id. at 18 ¶ IV(B).

In 2013, the Massachusetts Family Court awarded custody of the child to William with instructions that "[v]isitation shall be as agreed upon by the parties." Id. ¶ 24. For a period of time thereafter, William and Brooks "were able to agree on a co-parenting schedule . . . ." Id. However, William stopped letting Brooks see their child in 2015. Id. ¶ 26. According to Brooks, this was in retaliation for Brooks having refused to allow her twelve year old daughter (by another individual) to sleep at William's home. See id. ¶¶ 25–27.

For at least the last six months of 2015, the child lived with William in New Hampshire. See id. ¶ 30.

    B. Proceedings in NH Family Court

Brooks describes numerous judicial proceedings involving the child in NH Family Court between 2016 and 2019.[2] According to Brooks, she "had to go" to NH Family Court "because

---

[2] Although the exact nature of the proceedings Brooks' describes are not entirely clear, she generally describes the following: (1) an initial request for relief that she filed in January 2016, see id. ¶ 31 (citing Docket No. 656-2016-DM-00107); (2) William "register[ing] the Massachusetts Family Court Order in New Hampshire" in August 2016, id. ¶ 32 (citing Docket No. 657-2016-DM-291); (3) a "Petition to Change Court Order" that she filed in February 2017, id. ¶ 33; and (4) a "Petition to Terminate" Brooks' parental rights that William and Lisa filed "in retaliation" sometime thereafter, id. ¶ 33 (citing Docket No. 657-2017-TR-00009).

[the child] had been living outside of Massachusetts for six months" and the NH Family Court therefore "had jurisdiction." Id. ¶ 30.

Brooks' claims that William and Lisa (in conjunction with William's mother and stepfather, co-defendants Karen and Gerald Delaney) had designs to "abuse" the NH Family Court in order to "violate my parental rights and force me into sexual slavery for [William's] benefit." Id. ¶¶ 23, 34; see id. ¶¶ 40, 42. As to the NH Family Court, Brooks' levies conclusory assertions of corruption, incompetence, unfairness, and bias, see id. ¶¶ 35–36, 48, while also asserting that the NH Family Court has "force[d] me into sexual slavery" and is a "cognizant participant[ ] in trafficking me," id. ¶¶ 42, 45. These claims against the NH Family Court are based on the following allegations against the other judicial defendants:

### i. Judge Carbon

In 2016, Brooks sought judicial relief from William's refusal to allow her to see their child. See id. ¶¶ 30–31. Brooks claims her case was dismissed after Judge Carbon denied her request for relief from the filing fee. Id. ¶ 31. According to Brooks, Judge Carbon's ruling on her request for relief from the filing fee was "arbitrary and unfair" because Brooks obtained a filing fee waiver in 2019 even though "my financial situation had not changed . . . ." Id. Based on Judge Carbon's purportedly "arbitrary and unfair" ruling, Brooks claims she was "denied justice" by the NH Family Court in 2016. Id.

### ii. Judge Ryan

During a proceeding in NH Family Court in 2017, Brooks alleges that Judge Ryan "refused to listen to anything I had to say" and "cancelled my hearing and did not issue orders." Id. ¶ 35. Based on these allegations, Brooks claims Judge Ryan violated her due process rights.

Id. ¶ 37.  She filed a federal lawsuit against Judge Ryan related to these allegations, and this Court dismissed that lawsuit.  Id. (citing Docket No. 17-cv-40049-TSH).

### iii.   *Judge Introcaso, Marital Master Love, and Referee Thorn*

Brooks' claims as to Judge Introcaso, Marital Master Love, and Referee Thorn arise out of two purported NH Family Court proceedings in or around June 2017 and August 2017.

It appears the proceeding in June 2017 related to Brooks' visitation rights.  See id. ¶¶ 43(c), 44.  Brooks alleges that evidence of her involvement in prostitution was offered against her during that proceeding.  See id. ¶¶ 43, 45, 52.  In response, Brooks asserts that she denied having any ongoing involvement in prostitution at that time.  See id. ¶¶ 43, 49.  In Brooks' own words: "When I was in Court I tried to deny that I was a sex worker in a feable [sic] attempt to save my reputation."  Id. ¶ 49.

According to Brooks, Judge Introcaso (on Marital Master Love's recommendation) issued an order stating, in part, that Brooks was "not to 'work' during any of her parenting time." Id. ¶ 43(c).  Brooks claims that Judge Introcaso was ordering her not to work as a prostitute during her parenting time and, by implication, to engage in prostitution when she was not with the child.  See id. ¶ 44.  Brooks further asserts that Marital Master Love recommended this order to Judge Introcaso "to retaliate against me" for having previously filed her federal lawsuit against Judge Ryan.  Id. ¶ 38.

In August 2017, Brooks states that she failed to appear for a proceeding apparently related to child support.  Id. ¶ 46.  Based on her default, Brooks alleges Judge Introcaso (on Referee Thorn's recommendation) ordered Brooks to make child support payments in an amount based on a "reasonable estimate" of Brooks' income.  Id. ¶¶ 39, 43.  According to Brooks, this order amounted to a "blatant attempt to traffick [sic] me" because her only income at the time

4

was derived from prostitution. Id. ¶ 45. As such, Brooks claims that the order "compelled me to commit commercial sex acts for [William's] benefit." Id. ¶ 38.

Based on her allegations, Brooks appears to assert claims against the judicial defendants for (1) committing her to slavery or involuntary servitude contrary to the Thirteenth Amendment; (2) denying her due process of law in violation of the Fourteenth Amendment; (3) denying her equal protection of the law in violation Fourteenth Amendment; and (4) violating the Mann Act of 1910.

## II. Argument

### A. The judicial defendants are not subject to personal jurisdiction here

Brooks' claims against the judicial defendants should be dismissed because this Court does not have personal jurisdiction over them. For this Court to exercise personal jurisdiction over any one of the judicial defendants, that defendant would need to have "sufficient minimum contacts with [Massachusetts] such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"The plaintiff bears the burden of proving the court's personal jurisdiction over a defendant." Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (quoting Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)). Despite bearing this burden, Brooks has not alleged even a single contact (let alone a sufficiently minimal one) between any of the judicial defendants and Massachusetts.

Brooks' claims against the judicial defendants arise exclusively out of her contacts with New Hampshire. Indeed, she asserts that she "had to go" to New Hampshire because the child did not live in Massachusetts, Compl. ¶ 30, and she otherwise indicates that all proceedings in

the NH Family Court occurred in New Hampshire. Under these circumstances, there is no basis for this Court to exercise personal jurisdiction over the judicial defendants in Massachusetts. Cf. Clark v. Deal, No. 2:08-CV-173, 2009 WL 902533, at *3 (M.D. Ala. Mar. 31, 2009) ("Simply put, no person would reasonably anticipate being haled into an Alabama court because of orders he wrote as a Georgia state judge."); Olsen v. Mapes, 139 Fed.Appx. 54, 58 (10th Cir. 2005) (affirming the district court's ruling that it lacked personal jurisdiction over claims against a judge arising out of judicial proceedings in another state); Cavallary v. Lakewood Sky Diving Center, 623 F.Supp. 242, 244 (S.D.N.Y. 1985) (ruling the same).

    B. Brooks' claims are barred by the Eleventh Amendment, judicial immunity, and quasi-judicial immunity

        i. *Eleventh Amendment*

Brooks' claims against the NH Family Court must be dismissed because they are barred by the Eleventh Amendment. The Eleventh Amendment insulates the states from private lawsuits against them in federal court. See Alden v. Maine, 527 U.S. 706, 729–30 (1999) (explaining that "we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition which it confirms"—i.e., "that each State is a sovereign entity in our federal system," and that "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent") (quoting Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996)) (ellipsis omitted).

"Arms" of the state are the state for Eleventh Amendment purposes. See Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 477 (1st Cir. 2009) ("An administrative arm of the state is treated as the state itself for the purposes of the Eleventh Amendment, and it thus shares the same immunity."); Pastrana-Torres v. Corporacion de P.R., 460 F.3d 124, 126 (1st Cir. 2006)

(explaining that the Eleventh Amendment protects "the states themselves and entities that are determined to be arms of state").

The NH Family Court is an arm of the sovereign state of New Hampshire.  See N.H. Rev. Stat. Ann. §§ 490-F:2 [Circuit Court; General], F:3 [Circuit Court Divisions]; see also Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) (affirming dismissal of claims against the Trial Court of Massachusetts on Eleventh Amendment grounds).  The NH Family Court is therefore protected from private suit in federal court by the Eleventh Amendment.  As such, NH Family Court should be dismissed from this action.

## ii. *Judicial Immunity & Quasi-Judicial Immunity*

Brooks' claims against the other judicial defendants are barred by judicial and quasi-judicial immunity.  The Supreme Court has long recognized that "a general principle of the highest importance to the proper administration of justice" is that "a judicial officer, in exercising the authority vested in him [or her], should be free to act upon his own convictions, without apprehension of personal consequences to himself."  Stump v. Sparkman, 435 U.S. 349, 355 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1871)).  Indeed, "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed with their judicial jurisdiction."  Cleavinger v. Saxner, 474 U.S. 193, 199 (1985) (quoting Pierson v. Ray, 386 U.S. 547, 553–54 (1967)).  "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independent and without fear of consequences."  Pierson, 386 U.S. at 554.

Absolute judicial immunity is enjoyed both by "judges of courts of superior or general jurisdiction," Stump, 435 U.S. at 355–56 (quotation omitted), and by judges of limited jurisdiction, see Pierson, 386 U.S. at 553–554 (ruling that a "municipal police justice" enjoyed judicial immunity). Likewise, "[t]he doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are inextricably intertwined with the judicial function." Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012).

These principles are fatal to Brooks' claims against Judge Carbon, Judge Derby, Judge Introcaso, Judge Ryan, Master Love, and Referee Thorn, as her claims all arise out of the judicial or quasi-judicial conduct that these defendants purportedly engaged in during the NH Family Court proceedings. See id. at 30–31 (ruling that "[c]ourt-appointed discovery masters" enjoyed quasi-judicial immunity where the Massachusetts Rules of Domestic Relations Procedure authorized their performance of "judicial functions" related to discovery); accord N.H. Rev. Stat. Ann. §§ 490-D:8 [Nominations and Appointments of Marital Masters], D:9 [Recommendations of Marital Masters]; N.H. Rev. Stat. Ann. § 490-F:15 [Referees]. The individual judicial defendants should therefore be dismissed from this action as well.

### C. The complaint fails to state a claim against the judicial defendants

First, as to Brooks' claim that the judicial defendants committed her to involuntary servitude in violation of the Thirteenth Amendment, her repeated assertions that they "compelled" her to engage in prostitution is a conclusory assertion that does not logically follow from her allegations. Brooks alleges that she was ordered to pay certain amounts of child support. She does not reasonably allege that she was ordered to perform prostitution services to make those support payments. Rather, she asserts that she denied to the NH Family Court that she worked as a prostitute, and she acknowledges that she was thereafter ordered to pay child

support after she defaulted for failing to appear for a hearing.  Accordingly, she has failed to state a plausible claim based on a Thirteenth Amendment Theory.

Next, as to any claim predicated on due process, Brooks either has or had the opportunity to remedy any due process violations during the NH Family Court proceedings by appealing the NH Family Court's final decisions to the New Hampshire Supreme Court.  See N.H. Fam. Ct. R. 1.31.  This opportunity for further judicial relief is fatal to Brooks' federal due process claim. See Rumford Pharm., Inc. v. City of E. Providence, 970 F.2d 996, 999 (1st Cir. 1992).

With respect to Brooks' purported equal protection claim, her conclusory assertions notwithstanding, she has failed to allege any facts that support a plausible inference that any of the rulings she takes issue with were, in fact, based on racial discrimination.

As to Brooks' attempt to assert claims under the Mann Act of 1910, she has no right to the civil relief she seeks under the criminal provisions of that act she relies on.

Finally, as to Judge Derby specifically, aside from naming him as a defendant, Brooks makes no mention of him in the complaint.  She has therefore failed to state a claim against Judge Derby for this reason as well.

For these reasons, Brooks' complaint fails to state a plausible claim for relief against the judicial defendants on any perceptible theory.  The claims against them should therefore be dismissed in their entirety.

### III. Conclusion

For each of the foregoing reasons, Brooks' claims against the judicial defendants should be dismissed in their entirety.

Respectfully submitted,

NEW HAMPSHIRE FAMILY COURT, 9TH CIRCUIT / MARITAL MASTER ALICE S. LOVE / JUDGE SUSAN B. CARBON / REFEREE LAUREN THORN / JUDGE MARK S. DERBY / JUDGE JULIE INTROCASO / JUDGE MICHAEL RYAN

By their attorney,

GORDEN J. MACDONALD
ATTORNEY GENERAL

December 21, 2020

/s/ Anthony J. Galdieri
Anthony J. Galdieri
BBO No. 672450
Senior Assistant Attorney General
NH Department of Justice
Office of the Attorney General
33 Capitol Street
Concord, NH 03301
(603) 271-3650

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was mailed this 21st day of December 2020, postage prepaid, to:

> Andrea Brooks
> 96 Old County Road
> Winchendon, Massachusetts 01475

/s/ Anthony J. Galdieri
Anthony J. Galdieri
BBO No. 672450

10